May it please the court, Tracy Dressner for Petitioner Leif Taylor. This case really presents a straightforward question. In 2004 this court reversed Mr. Taylor's conviction and issued a conditional writ that said, you know, if he gets retried it has to be with evidence other than the illegally resulted in Mr. Taylor's current conviction. A prosecution witness said that Mr. Taylor had confessed. Didn't say he confessed to the police. He did not. And there was other evidence disputed but there was other evidence that he made statements, confessions to, I mean statements that could be viewed as I think there's sort of a layperson belief that confession involves some something of legal significance and certainly something different than what what had been presented so far. At that point in the trial Lucero was only the second prosecution witness was that back in in in 1994 Lucero had said that that Mr. Taylor had gotten in the van and said I you know I just shot the group of teens that were involved in whatever was going on that night saying that it's not a confession that's a let's get me out of here that's not what one a layperson would think of as a confession. We live in an age of... What about Mr. Elliott? What about Mr. Elliott? That's way after the it's way after the time of the events. Well so might a lay person consider those statements at that time confessing to the crime? Well two responses to that one is that at the point that this occurred in the trial Elliott hadn't testified yet and putting aside all the weirdness related to what Elliott claimed happened again that's not a confession conveys with it some some aura of legal importance not something you say to somebody that you know an acquaintance when you're ice-cream at the 7-eleven. Confession to a lay person implies something involving the police or something involving your priest. It's a it's a it's a stronger word than that and really at the core though is that there was a simple order from this court don't bring in the confession. All the court had to do at the point when this was done was declare a mistrial. It was only the second witness. The the the relevance was that Mr. Taylor was entitled to a fair trial that didn't have this aura of the confession and that wasn't what happened and what's actually even more disturbing about how it played out with the denial of the mistrial was the next day when they were still debating what to do the prosecutor comes in and the first thing the prosecutor says to the court is you know a denial of a mistrial it's it's it's a reviewed for an abuse of discretion all you have to do is not be arbitrary and capricious. Then there's a little back and forth and then the judge says I've thought long and hard about what I'm going to do and my decision is not arbitrary and capricious. What they were doing and then proceeds to say that pare it back exactly what the prosecutor had said and so the point wasn't to try and ensure that Mr. Taylor had a fair trial or to ensure that the court was mandate had been. It was to try and protect the going forward with the trial and not wasting other resources or as the court said well if we had another retrial Lucero would do it again. Well that's not Mr. Taylor's issue. Mr. Taylor's entitled to a fair trial if they have a witness they can't control. He shouldn't have to be subjected to a trial where the confession comes in. There's no suggestion that the prosecution manipulated this somehow. Well not directly certainly indirectly when we started. I know you sort of tried to hide that between the lines but well I mean I don't see any evidence of that. Well I I respectfully disagree there's two issues. One is it's uncontroverted that before the first retrial that prosecutor and this was the same prosecutor for all the trials that this prosecutor told Lucero if you don't give us the same testimony that you gave initially that Mr. that Taylor got in the van and said I shot the guy we're gonna charge you with murder. That's a pretty heavy thing to tell somebody and then expect that they're not gonna say exactly what you wanted them to say. But the other thing is you cannot read what transpired with Lucero's testimony at the second retrial and not think that this was coercion and badgering of a witness. The judge took it upon herself to decide what the truth was. To decide that Lucero wasn't providing the truth and jails him for four days and then he comes back to court and this prosecutor is badgering him relent unrelentlessly and and till and he keeps saying you're not not the truth about what happened on the ground at the time of the crime or the time of the events. What the judge said is you're lying when you're saying you don't remember. But there wasn't any way coercion I mean he could have said okay I do remember and Leaf Taylor didn't say that to me. But and that's the truth. As far as far as the pressure from the judge is concerned the judge just didn't believe he was. That he didn't remember. That he didn't remember and we weren't there. I'm I'm inclined to think that she got right on that. Well but we don't know and it seemed to me and and this wasn't an issue. I remember things considerably further back than 13 years. It's not 13 years isn't that long a time and it's hard to believe that if he remembered the facts of the first trial he remembers the facts of the second trial he now for the third trial he didn't he didn't remember. I mean I I can I I certainly it's it's hard to disagree with a judge or say that's an abuse of discretion for her to say look I think you're lying I'm gonna jail you until you stop pretending that you don't remember. Well it's also hard to disagree with Lucero's point that there had been so many different versions told that that he wasn't sure what was the truth. I find it considerably easier to disagree with that than I do with disagreeing with the judge. I mean you know I but but the fact still remains that Lucero was jailed for four days and that he was while he was expressing concern on this on the second day of his testimony after being jailed for four days about wanting to see his daughter not having gotten fed not not being concerned that what no matter what he said he was going to be jailed again that that the prosecutor kept asking him the same questions over and over and and then. But but you don't have a I'm sorry I you don't have a claim here based on the prosecutors of on the pressure that the prosecutor put on on the witness right? You're not this is just background information to how that how that. I mean I could I could sort of understand I'm not saying you should have raised it or anything else but I understand the nature of that claim the witness is being pressured to lie by you know but you're not raising that claim I'm not sure where it would go but I at least I understand I understand the claim but once you get past that point I just don't see where you I mean I'm just speaking for myself but I just don't see where if a judge is sitting there and believes a witness is trying to escape testifying by pretending she thinks he's to not remember when that is not a legitimate function for the judge to perform. There's nothing there's nothing out of the ordinary or improper or irregular I mean that's what one of those reasons judges are there to make sure the witnesses don't escape testifying by pretending pretending not to lie. I don't want to get sidetracked on that issue because it's really only a collateral issue it was presented but you raise it I'm trying to sort of peel back the onion I don't think that's an issue at all because let's come back to the issue. The issue is this court's order didn't say that a confession could come in indirectly or that the confession could be mentioned but the details not be given or that the confession could come in and the jury could be told to disregard it the court's order was pretty clear it got to be convicted on evidence other than the illegally obtained confession the witness testified that. Let's accept that that that was in fact I mean I don't think we're as explicit as you would like us to have been but there it is. But stuff happens at trial the judge here immediately stopped the trial gave a curative instruction said told the jury to disregard and so on and we have a presumption in our law which I'm sure is reflected in California law as well the why isn't this now why is it not the case that we have to treat this as a trial with a confession you know the reference of the confession is not in the record because the judge told the jury disregarded well why isn't that in fact in conformance with our order? Because as we all know and as the United States Supreme Court has said confessions can't really be flushed out of jurors minds once they hear it and again you have to look at the circumstances in in the way this came in as soon as he said he confessed. But you remember the confessions the Supreme Court has held are not are subject to harmless error review what is that fully love? Arizona versus Fulamente but Fulamente yeah there we go right but but the way you have to this was red flag for the jury he says you know why are you doing this to me he confessed he's already confessed just leave me alone judge immediately calls the jury out sends him out judge it did the attorneys in the court talk for a while court calls the jury back in sends them home then the first thing that happens when they come in they come in the next morning again there's a lot of attorney stuff the juror finally come in and the first thing the judge says to them is disregard anything that was said about a confession. We'll talk about red lights flashing lights you you how could the jury not be thinking confession that this was something critical and we also have to think of the context. There's another way to look at it there's another way to look at it he used the word confession that has some legal connotation and when she comes back with this instruction it says you decide what's a confession or an admission I thought it was actually kind of a clever way to do this to throw admission in there with confession so couldn't the jury just have been thinking that oh something wrong happened because they called this statement of Lucero's or that Lucero made about all these things that people were saying a confession. Well I suppose you could think of it that way but again context is everything in this case. You can't disregard that this jury knew that the murder happened in 1993 and that Leif Taylor was arrested in 1993 and that there had been multiple proceedings and it it would not take a very much leap to figure out that this was a retrial and why might there be a retrial with these red flag confessions. It doesn't take a degree to think that maybe there was a confession that we're not supposed to know about and and we don't know what exactly the jury would have thought but there was a simple solution given this court's order grant the mistrial grant the mistrial let's not worry about it I mean that's exactly what what did the Taylor's attorney say we couldn't if there had been a bigger error that could have occurred I couldn't imagine it this is exactly what we were all concerned about the judge knew it the judge had instructed multiple times don't say anything about the confession. Here's a bigger error the policeman's on the stand and he says he confessed to me I can imagine a bigger error. Well that second biggest then but pretty close. I'm gonna unless there's further questions I'm gonna reserve some time for rebuttal. Thank you. Thank you. We'll hear from the warden. Good morning your honors Deputy Attorney General Louie Carlin for respondent and may it please the court. The initial claim that we were talking about fails for three reasons and that the first is that there was no confession admitted at the time. The second is that the court was aware of the problem and had taken every step they could to avoid that and the court's curative instructions was a very reasonable exercise of discretion in order to ensure a fair trial. Then the question is. So this is an entirely a witness case right there's no physical evidence. Correct your honor. So a confession winds up being you know when you've got physical evidence you've got physical evidence and but conflicting reports conflicting witnesses and that kind of situation the idea that the defendant the defendant confessed is pretty big stuff. Correct your honor. So the reason that the curative instructions made sense here is that the statement was quick fleeting and immediately and the court the court instructed the jury not to consider it. The statement was confession and at the time Lucero made that statement he had already testified that when petitioner got back in the van he said I shot the fool. So so we do have an admission there and that is something that the jury was legitimately entitled to consider. So the court carefully balanced these considerations said you know I could just say don't don't consider it at all and the basic instructions that the deliberations must be based entirely on evidence this is an evidence you have to act as if you did not hear it. But the court did more than that. The court took cognizance of the fact that admission actually two admissions had already come into evidence because there was one the prior witness Lava who testified that petitioner had admitted the crime. So what the court did was say you know you heard the word confession. Confession is a term of art and I'm going to tell you how to understand it. Here's the difference here's an admission and here's a confession and you jurors are the ones who determine what is a confession. Counsel I just want to clarify one thing you indicated there was no physical evidence. This may not be the strongest evidence but I thought the 22 caliber bullets recovered from the petitioner's home were introduced into evidence. They were your honor. So we do know that the victim was killed by two gunshots two 22 caliber bullets and yes but but nothing tying him. That's as close as they were found in the garage and nothing belonging to the defendant was near these bullets in the garage right? Correct your honor. Okay. You can really think of three sources of evidence in this case so it's not just statements because you have the eyewitness testimony that very strongly puts Rodriguez at the scene and at the scene in the company of another young male. So we know he's there and that's very strong. Then you have the second source of evidence which would be the statements from the people in the van and the van. I'm sorry let me just go back to your first statement. I thought that some this is offshare the this is a we're talking about the am I pronouncing the name right? Offshare. Offgang. O-F-G-A-N-G. I believe. Okay okay and didn't he at some point testify that he thought the second male was Hispanic? He did at the first trial. But not in the second trial. At the third trial. The thing about Offgang was that he never really saw the second assailant very well. It's very clear he never saw his face in full. So he did call him an Hispanic. Absolutely. At the second trial. I guess it might have been because he definitely saw the other. Rodriguez. And I gather he looks Hispanic or so he may have simply associated. Indeed that's a likely explanation. But in any event he doesn't say Hispanic at the trial we're now considering. No he tries to back I didn't mean a dark-skinned Hispanic. I think the fact. I meant a light-skinned blue-eyed Hispanic. Yes well there indeed and the jury could listen to those discrepancies and and make up their mind. But I think the key fact is he didn't see the second assailant well enough to determine race. And and Hispanic is a very broad term so it's not as if we can do a sort of a mathematical problem and say. No but that's that's a different issue. The question that there are Hispanics who might be you know blonde and blue-eyed. I think the idea is when somebody says he looks Hispanic they probably mean somebody who looks. So the typical Hispanic dark-eyed somewhat dark-skinned which is saying he looks Hispanic is a shorthand way of saying he has those characteristics right. That's right and and my point is that on the one hand you have the clear identification of Rodriguez and you have a hazy identification of the second person. He never saw the face full-on. It was dark. The lighting was by street lamp and headlights. So I just don't think you can put that much stock into it. But you were relying on that. You said there were three sources of evidence and that one source is very weak. He's not only somebody who didn't see him full face. He saw him with hazy light and in some ways misidentified him first time as Hispanic right. Oh absolutely. I'm not using that first source to identify him as as an eyewitness ID. I think absolutely not. I think all we know is that but we're very clear. Rodriguez was there and with someone else. Right. Okay so that's all I'm saying from that source. And a male. Likely a male. Right. Slim build, young. He got that right both trials. So then so you have at least consistent. He was consistent on some things. And so then you have that one source. The second is the people in the van saying Rodriguez and Petitioner got out of the van and walked in the direction of the murder scene just before the gunshots. We picked them up just after the gunshots together. So that's source number two. So that's pretty strong circumstantial evidence saying that the second person was Petitioner. And then finally you have the admissions. And we have five witnesses who testified as to admissions by Petitioner. Three in the van and the two, Elliott and Leyva, who saw him the night after and the day after. Did the urine evidence come in in the third trial? The urine? Urine. Oh the urine. Yeah I'm sorry. Our words are very difficult for me. I could use the other word but we're on the air. That same evidence came in. It did come in. Okay. Same source. I'm pretty sure. Well actually. I get confused with the trial. I thought Bonilla said something about this. Was it Bonilla? Bonilla did and she testified at the first trial. She was the only person from the van who who testified at the first trial. So the urine also came in through the testimony concerning concerning it only came came in through her and others. I believe Rodriguez, at least Rodriguez. Okay. So you are claiming no air? Harmless air? What exactly is the state's position? As to the first argument that there was a violation of the court's mandate, we're saying there simply was none. As to an ADPA violation of the ADPA standard for this inappropriate statement coming in, we're saying under this court's decision in Hayes, essentially the same approach. The first question would be is there a clearly established Supreme Court precedent? And as the court said in Hayes, there probably isn't. This is a lot like Holly versus Yarborough where we don't have we have an abusive discretion standard to which we must defer but then we have what's the constitutional error? And the closest you can come to is a violation of one's right to a fair trial under Estelle B. McGuire. Probably too general. And that's what the court said in Hayes but then alternatively it said okay were the curative instructions sufficient to ensure a fair trial? And we So I would say the trial court in exercise of its discretion reasonably gave curative instructions that the Court of Appeal in California could reasonably determine protected petitioners rights to a fundamentally free trial. Thank you. You had a little time left for rebuttal. We'll give you a total of two minutes. Not one person at that trial testified that Taylor ever said anything in the van. This trial, the second trial, was completely based on statements that were made back in 1994 that the witnesses either disavowed or explained how the instructed them to say that Taylor was the one who had said that in the van. And indeed Lucero and Bonilla testified about the witnesses all getting together because Hispanics stick together to make sure that their stories meshed. As I described in my brief, it is a completely reasonable scenario that exactly what was testified to happened. But if you substituted one of the larger males that were in that van that day, say Allen Meister or Abel, who we know nothing about, and said substituted Taylor for that person, you'd have the exact same trial and we'd be sitting here talking about their conviction. This was based on statements made by teenagers 13 years earlier. Nobody testified at this trial. They disavowed their statements. Even Bonilla disavowed it. The statement that Bonilla claimed that Taylor had said that came in through the police officer who very fluently explained how Bonilla had said that Taylor had said this. This was the same police officer who had no memory about Taylor's confession that this court found had engaged in unfair police practices regarding the same case. We have Rodriguez testifying that the were those officers? The same ones that this court said had engaged in unfair police practices with regard to Taylor's confession. These are the witnesses and this is a situation in which we're going to rely upon for the sanctity of Mr. Taylor's murder conviction for which he may very well spend the rest of his life in prison. It seems a little weak to me. Going back to the confession issue, there was a simple solution to comply with this court's mandate. All the court had to do was grant the mistrial. They were only two witnesses into the trial. Instead, the court set it up solely to protect her decision from appellate review by claiming she wasn't being arbitrary and capricious by relying on, well, if we tell the juries to disregard it and juries are presumed to have to disregard it, we've cured it. And because Lucero would, if we did it again, if we had retried it, he would do it again. Those were the three reasons that she gave for denying the mistrial. We have the United States Supreme Court, as I said, saying that confessions can't be erased from somebody's mind, even if you instruct them to do so. And Mr. Taylor should not be serving the rest of his life in prison because they feared that they had a witness that was out of control. That's a trial problem. That's a fairness issue related to Mr. Taylor's entitlement to a fair trial. Thank you. Okay, thank you. Case is how you will stand submitted.
judges: Kozinski, Owens, Restani